Robin GAERTNER, f/k/a Robin Roth, Plaintiff,

v.

Gertruda HOLCKA, Order of The Franciscan Fathers, Northbrook Property and Casualty Insurance Company and Catholic Mutual Relief Society, Inc., Defendants-Appellants,†

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Supreme Court

*No. 96–2726. Oral argument January 7, 1998.—Decided June 26, 1998.*

(On certification from the court of appeals.)

(Also reported in 580 N.W.2d 271.)

†Motion for reconsideration denied August 31, 1998. Abrahamson, C.J. dissents. Geske and Bradley, J.J. join.

For the defendant-appellant there were briefs by *Frank L. Steeves, John R. Pendergast, Jr.* and *Crivello, Carlson, Mentkowski & Steeves, S.C.,* Milwaukee and oral argument by *John R. Pendergast, Jr.*

For the defendant-respondent there was a brief by *Thomas M. Devine, JoAnne Breese-Jaeck* and *Hostak, Henzl & Bichler, S.C.,* Racine and oral argument by *Thomas M. Devine.*

¶ 1. JON P. WILCOX, J. This case is before the court on certification from the court of appeals following an order of the Circuit Court for Kenosha County, David M. Bastianelli, Judge, which dismissed the appellants' (collectively referred to as Catholic Mutual) motion for summary judgment upon Catholic Mutual's cross-claim for contribution against the respondent American Family Insurance Company (American Family). Catholic Mutual appealed from the circuit court's final order.

¶ 2. As we interpret this case, there is one issue presented for our determination: whether a common law action for contribution may be brought against persons who violate Wis. Stat. § 347.48(2m)(c) (1989–90),[1] as controlled by § 347.48(2m)(g), by operating a motor vehicle without reasonably believing that each passenger between 4 and 15 years of age, and seated at a designated seating position in the vehicle, is properly restrained with a seat belt. The court of appeals presented the following two issues on certification: (1) whether the passive negligence of a non-intentional negligent tortfeasor creates a common liability with a causally negligent tortfeasor supporting a claim of contribution for enhanced injuries attributable to the passive negligence; and (2) whether there can be contribution in an enhanced injury case from a party whose passive negligence was a substantial cause of the enhanced injuries.

¶ 3. We need not address these issues as they are certified to this court, since we conclude that the legislature has expressed its intent that a claim for contribution may not be sustained in cases involving negligence for failure to restrain another with a seat

---

[1] All future statutory references are to the 1989–90 volume unless otherwise noted.

belt, as controlled by Wis. Stat. § 347.48(2m)(g). Accordingly, we affirm the order of the circuit court which dismissed Catholic Mutual's motion for summary judgment.

¶ 4.   In the proceedings below, the parties stipulated to the relevant facts in this matter. On September 11, 1991, the plaintiff Robin Gaertner (Gaertner) picked up 11 year-old Justin Koldeway (Koldeway) from school at the request of Koldeway's mother and drove him to a doctor's appointment. Following the appointment, Gaertner, a friend of Koldeway's mother, began driving to her home with Koldeway seated in the rear seat of the car. On the way home, Gaertner was involved in an accident with an automobile driven and owned by the defendant Gertruda Holcka (Holcka). The accident was caused solely by Holcka's negligence.

¶ 5.   At the time of the accident, Koldeway was not wearing an available rear shoulder harness seat belt installed for his seat. Gaertner operated her automobile without reasonably believing either prior to or at the time of the accident that Koldeway was wearing the seat belt.

¶ 6.   Koldeway sustained serious and permanent injuries in the accident, amounting to $588,235.29 in damages. As a full and final settlement of Koldeway's claims arising out of the accident, Catholic Mutual, Holcka's insurer, paid $500,000 to Koldeway. At the same time, Catholic Mutual preserved its right to seek contribution from Gaertner's insurer, American Family, which had issued a $100,000 insurance policy to Gaertner that was in effect on the date of the accident.

¶ 7.   The $500,000 settlement appears to represent 85% of the total damages suffered by Koldeway, as reduced by the parties' apparent inter-

pretation of Wis. Stat. § 347.48(2m)(g). The relevant provisions of this statute provide:

**Safety belts and child safety restraint systems. . . .**

**(2m)** REQUIRED USE. (a) In this subsection, "properly restrained" means wearing a safety belt approved by the department under sub. (2) and fastened in a manner prescribed by the manufacturer of the safety belt which permits the safety belt to act as a body restraint.

. . .

(c) If a motor vehicle is required to be equipped with safety belts in this state, no person may operate that motor vehicle unless he or she reasonably believes that each passenger who is at least 4 years old and not more than 15 years old and who is seated at a designated seating position in the front seat required under 49 CFR 571 to have a safety belt installed or at a designated seating position in the seats, other than the front seats, for which a shoulder harness has been installed is properly restrained.

(d) If a motor vehicle is required to be equipped with safety belts in this state, no person who is at least 4 years old and who is seated at a designated seating position in the front seat required under 49 CFR 571 to have a safety belt installed or at a designated seating position in the seats, other than the front seats, for which a shoulder harness has been installed may be a passenger in that motor vehicle unless the person is properly restrained.

. . .

(g) Evidence of compliance or failure to comply with par. (b), (c) or (d) is admissible in any civil action for personal injuries or property damage

resulting from the use or operation of a motor vehicle. Notwithstanding s. 895.045, with respect to injuries or damages determined to have been caused by a failure to comply with par. (b), (c) or (d), such a failure shall not reduce the recovery for those injuries or damages by more than 15%. This paragraph does not affect the determination of causal negligence in the action.[2]

¶ 8. Wisconsin Stat. § 895.045, as cross-referenced in § 347.48(2m)(g), is Wisconsin's contributory negligence statute. It provided as follows:

**Contributory negligence.** Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person against

[2] The record is unclear as to how the parties arrived at the $500,000 figure, but it appears that they may have interpreted Wis. Stat. § 347.48(2m)(g) to require a 15% reduction from Koldeway's *total* damages. *See* Record on Appeal at 24:2 (Am. Fam. Brief March 15, 1996) (illustrating that $500,000 is exactly 85% of the total damages of $588,235.29). Because this issue is not before us on appeal, we need not decide whether this reading of § 347.48(2m)(g)—if indeed the parties have adopted this interpretation—is the correct one.

Although § 347.48 employs the term "safety belt," we use the term "seat belt" throughout this opinion for purposes of simplicity. The term is intended to have the same meaning as that used in the Wisconsin statutes. In addition, we note that § 347.48(2m) contained a "sunset" provision. *See* § 347.48(2m) (h) ("This subsection does not apply after June 30, 1991."). Effective July 6, 1991, this sunset provision was repealed by 1991 Wisconsin Act 26. Therefore, the 1989–90 version of the statutes remained in effect throughout the time period that is relevant to this case.

whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

¶ 9. Dr. Joel Myklebust, a qualified biomechanical engineer expert witness, opined that Koldeway's damages would have been reduced substantially had Koldeway been wearing a seat belt at the time of the accident. According to the expert, 75% of Koldeway's injuries were caused by the failure to wear a seat belt and 25% were caused by the accident.

¶ 10. Of the 75% of injuries caused by failure to wear a seat belt, 70% of Koldeway's incremental injuries were caused by Gaertner's operation of her automobile without reasonably believing or ensuring that Koldeway was wearing a seat belt, and 30% were caused by Koldeway's own failure to wear a seat belt.

¶ 11. Gaertner subsequently brought suit against Catholic Mutual to recover damages for injuries which she sustained in the accident. In turn, Catholic Mutual filed a cross-claim against American Family seeking contribution for a portion of the $500,000 which it had paid to Koldeway. Specifically, Catholic Mutual calculated its contribution damages as follows: $500,000.00 x 0.75 x 0.70 = $308,823.53.[3]

---

[3] We note that Catholic Mutual used a slightly different formula in its brief to this court. *See* Appellants' Brief at 16–17 (using $588,235.29 total damages amount, rather than $500,000 settlement amount, as initial figure in formula). For purposes of this opinion, the proper formula to be used is irrelevant since both formulas produce dollar amounts that are in excess of American Family's potential liability of $100,000, and since Catholic Mutual has released Gaertner of any liability above American Family's policy limits. *See* Catholic Mutual Brief at 17, n.4.

¶ 12. Stated differently, Catholic Mutual multiplied the total insurance settlement paid to Koldeway by the percentage of Koldeway's injuries that were caused by the failure to wear a seat belt alone. This product was in turn multiplied by the percentage of Koldeway's injuries, enhanced by failure to wear a seat belt, that were caused by Gaertner's operation of her automobile without reasonably believing that Koldeway was wearing a seat belt at the time of the accident.

¶ 13. According to Catholic Mutual, the net amount represents the percentage of injuries caused by Gaertner's failure to ensure that Koldeway was wearing a seat belt. Therefore, Catholic Mutual argues that it was entitled to judgment for the entire $100,000 American Family policy.

¶ 14. Following a stipulated dismissal of Gaertner's claims against the defendants, Catholic Mutual filed a motion for summary judgment, arguing that the three elements of a contribution claim were satisfied in this case. "The three prerequisites to a contribution claim are: 1. Both parties must be joint negligent wrongdoers; 2. they must have common liability because of such negligence to the same person; [and] 3. one such party must have borne an unequal proportion of the common burden." *General Accident Ins. Co. v. Schoendorf & Sorgi*, 202 Wis. 2d 98, 103, 549 N.W.2d 429 (1996) (quoting *Farmers Mutual Auto. Ins. Co. v. Milwaukee Auto. Ins. Co.*, 8 Wis. 2d 512, 515, 99 N.W.2d 746 (1959)).

¶ 15. Specifically, Catholic Mutual argued that both itself and Gaertner were jointly liable for Koldeway's enhanced injuries because their independent torts concurred in time. Because the joint negligence of the parties caused the enhanced injuries,

Catholic Mutual asserted that the parties had common liability as well. Finally, Catholic Mutual argued that it had borne an unequal proportion of the common liability since it paid for all of Koldeway's damages arising out of the accident.

¶ 16. In response, American Family argued that neither the legislative history of Wis. Stat. § 347.48, nor the common law in this state has ever created a right of contribution for negligent tortfeasors in seat belt situations. To the contrary, American Family asserted that the legislature's choice to limit the reduction of damages recoverable by the injured party to 15% evidenced an intent to prevent the tortfeasor responsible for the accident from receiving a "windfall" other than the 15% provided by statute.

¶ 17. The circuit court concluded that since the accident was caused solely by Holcka's conduct, there was no common liability in this case. Because there was no common liability for the accident, Catholic Mutual was not entitled to contribution as a matter of law. Accordingly, on July 3, 1996, the circuit court denied the motion for summary judgment, and entered judgment in favor of American Family. Catholic Mutual appealed, and the court of appeals certified the case to this court pursuant to Wis. Stat. § (Rule) 809.61 (1995–96).

I.

¶ 18. The issue presented is whether a common law action for contribution may be brought against persons who violate Wis. Stat. § 347.48(2m)(c), as controlled by § 347.48(2m)(g), by operating a motor vehicle without reasonably believing that each passenger between 4 and 15 years of age, and seated at a

designated seating position, is properly restrained. Whether Catholic Mutual's motion for summary judgment should have been granted on this issue is a question of law that the appellate courts may review without deference to the circuit court's analysis. *See Santiago v. Ware*, 205 Wis. 2d 295, 323, 556 N.W.2d 356 (Ct. App. 1996). Although we follow substantially the same methodology employed by the circuit court in analyzing a motion for summary judgment, the facts of this case are undisputed and, as such, we need not engage in the step-by-step analysis which that methodology requires. *See id.*

¶ 19.    Before addressing the issue, we first trace the history of common law and legislation involving seat belt negligence in Wisconsin. Since 1967, Wisconsin has recognized that the failure to utilize an available seat belt could be a possible defense to a personal injury claim. *See Bentzler v. Braun*, 34 Wis. 2d 362, 385, 149 N.W.2d 626 (1967). Although the seat belt law did not then require use of a seat belt, we concluded that "there is a duty, based on the common-law standard of ordinary care, to use available seat belts independent of any statutory mandate." *Id.*

¶ 20.    Use of the "seat belt defense" was later discussed and clarified in *Foley v. City of West Allis*, 113 Wis. 2d 475, 335 N.W.2d 824 (1983). In *Foley*, we addressed the possible ramifications of the successful seat belt defense on liability or damages, "since the defense was not proved in *Bentzler*." *Id.* at 484. In characterizing the defense, we stated that: "[s]ince failure to wear seat belts generally causes incremental injuries, damage for these incremental injuries can be treated separately for purposes of calculating recoverable damages." *Id.* at 485. The incremental damages caused by seat belt negligence could be distinguished

from those produced by passive negligence, where the damages are identical to the injuries caused by the active negligence in the same accident and are difficult to separate for purposes of calculating recoverable damages. *See id.*

¶ 21.   As a result, we determined that seat belt negligence was not synonymous with ordinary passive negligence, but rather was more akin to an accident involving two incidents: the first incident being the actual automobile collision, and the second occurring when the occupant of the vehicle hits the vehicle's interior. *See id.* at 484–85. These differences led us to conclude that "a fair and administrable procedure. . .is to calculate a plaintiff's provable damages by the usual rules of negligence without regard to the seat belt defense and then take into account the seat belt defense by decreasing the recoverable damages by the percentage of the plaintiff's causal seat belt negligence." *Id.* at 486–87.

¶ 22.   Stated as a mathematical formula, we adopted the following method for calculating damages when a successful seat belt defense is employed:

> (1) Determine the causal negligence of each party as to the collision of the two cars (Table 1); (2) apply comparitive negligence principles to eliminate from liability a defendant whose negligence causing the collision is less than the contributory negligence of a plaintiff causing the collision (Table 1); (3) using the trier of fact's calculation of the damages, reduce the amount of each plaintiff's damages from the liable defendant by the percentage of negligence attributed to the plaintiff for causing the collision (Table 1); (4) determine whether the plaintiff's failure to use an available seat belt was negligence and a cause of injury, and if so what percentage of the

447

total negligence causing the injury was due to the failure to wear the seat belt (Tables 2 and 3); (5) reduce the plaintiff's damages calculated in step (3) by the percentage of negligence attributed to the plaintiff under step (4) for failure to wear an available seat belt for causing the injury.

*Id.* at 490.

¶ 23.  Steps four and five of this test were subsequently altered by the legislature in 1987. *See* 1987 Wisconsin Act 132; *see also* Wis. Stat. § 347.48. Legislative history indicates that the legislature intended to limit *Foley's* effect on the reduction of a plaintiff's recovery for damages that were caused solely by failure to wear a seat belt:

> The provision on personal injury actions revises Wisconsin common law, as formulated by the Wisconsin Supreme Court in *Foley v. City of West Allis*, 113 Wis. 2d 475, 335 N.W.2d 824 (1983). Under *Foley*, if negligent failure to wear a safety belt is a cause of the injured person's injuries, the injured person's recoverable damages are to be reduced by the percentage of damages caused by failure to wear a safety belt. Under Act 132, recoverable damages may *not* be reduced by more than 15%, regardless of the percentage of damages caused by failure to wear a safety belt.

*Information Memorandum* 87–8 at 8, Wisconsin Legislative Council Staff, January 8, 1988. *See also Legislative Reference Bureau Memorandum*, October 27, 1987.

¶ 24.  Thus, the legislature eliminated the possibility left open by *Foley* that seat belt negligence causing incremental injuries could disrupt the distribution of financial responsibility to any great degree. Prior to the legislature's action in 1987, a plaintiff's

recoverable damages, and, conversely, a defendant or defendants' overall financial responsibility, could have been significantly reduced in situations where the failure to wear a seat belt caused the majority of plaintiff's injuries. Since the amendment of Wis. Stat. § 347.48, the reduction in plaintiff's recoverable damages, and the corresponding "benefit" received by defendants, is statutorily limited to 15% of the injuries caused by failure to wear a seat belt.

## II.

¶ 25.   It is against this background that we make our decision regarding actions for contribution by a defendant's insurer against a plaintiff who is responsible for failing to ensure that an injured minor was properly restrained in a seat belt at the time of an automobile accident. Several considerations are relevant to our decision.

## A.

¶ 26.   First, it is important to recognize that we have never interpreted the seat belt defense to provide an affirmative cause of action for contribution. As we stated in *Foley*, seat belt negligence is not to be included in the same class as active or passive negligence. *See Foley*, 113 Wis. 2d at 484–86. Instead, the incremental injuries that are caused by the failure to wear a seat belt "can be treated separately for purposes of calculating recoverable damages." *Id.* at 485. This distinction "borrows from the apportionment technique used in two traditional tort doctrines: avoidable consequences and mitigation of damages." *Id.* at 487.

¶ 27.   Thus, it is clear that we have previously interpreted the seat belt defense to be just that: a

defense. When a party fails to wear a seat belt, he or she has presumptively failed to mitigate his or her damages. Defendants may assert plaintiff's failure to "buckle up" in defending against a cause of action for personal injury and negligence. As we made clear in *Foley*, the defense may not be used to affect the causal negligence in a personal injury action.[4] Instead of being viewed as ordinary negligence that could be used in an affirmative action to recover damages, then, the common law seat belt defense was seen as a useful tool to ensure "that the defendant is not held liable for incremental injuries the plaintiff could and should have prevented by wearing an available seat belt." *Id.* at 489.

## B.

¶ 28.    By amending Wis. Stat. § 347.48, the legislature explicitly adopted our interpretation of the seat belt defense. Significantly, the legislature sought to preserve *Foley*'s attempt to prevent defendants from attaining a windfall by indicating that "[t]his paragraph does not affect the determination of causal negligence in the action." *See* Wis. Stat. § 347.48(2m)(g). As it is relevant to this opinion, the legislature modified the common law in only two ways: (1) to limit to 15% the potential reduction in plaintiffs' recoverable damages; and (2) to establish a duty on

---

[4] This approach ensures that defendants are not granted a windfall, since plaintiffs might receive no compensation for damages that a jury determined they could not have totally prevented, and defendants could escape liability for injuries that the jury determined their negligence caused. *See Foley v. City of West Allis*, 113 Wis. 2d 475, 488–89, 335 N.W.2d 824 (1983).

behalf of the driver to properly restrain minor passengers.[5] We will address these changes in turn.

¶ 29. The change effected by subsection (2m)(g) (15% maximum reduction in plaintiff's recoverable damages) does not, on its face, illustrate any intent to create an affirmative cause of action for contribution. To the contrary, as explained below in section II.C. of this opinion, we conclude that it evidences the legislature's intent to preclude use of the seat belt defense in a contribution action.

¶ 30. Nor does the change effected by Wis. Stat. § 347.48(2m)(c) reveal any legislative intent to create a cause of action for contribution. It is important to recognize that a violation of subsection (2m)(c), the subsection imposing a duty upon drivers to "buckle up" their minor passengers, necessarily involves a violation of § 347.48(2m)(d), the subsection mandating use of a seat belt by minor passengers. If a person operates a motor vehicle without reasonably believing "that each passenger who is at least 4 years old and not more than 15 years old. . .is properly restrained," *see* § 347.48(2m)(c), it logically follows that "a person who is at least 4 years old. . .[is] a passenger in that motor vehicle [without being] properly restrained." *See* § 347.48(2m)(d).

¶ 31. "A basic rule of this court in construing statutes is to avoid such constructions as would result in any portion of the statute being superfluous." *State v. Wachsmuth*, 73 Wis. 2d 318, 324, 243 N.W.2d 410

---

[5] Catholic Mutual argues that Gaertner had a duty at common law to ensure that Koldeway was properly restrained in a seat belt. We need not decide whether Catholic Mutual's assertions are accurate since we conclude that the legislature has intended to preempt actions for contribution of this sort.

(1976). Read together with Wis. Stat. § 347.48(2m)(d) and (2m)(g), § 347.48(2m)(c) would be superfluous unless it had some additional purpose other than to reduce the plaintiff's recoverable damages by a maximum of 15%.[6]

¶ 32. In order to avoid a superfluous construction of the statute, we can identify two reasons for the inclusion of Wis. Stat. § 347.48(2m)(c). First, we conclude that the legislature included subsection (2m)(c) to ensure that defendants received, coupled with subsection (2m)(g), a possible 15% reduction in plaintiff's recoverable damages, even when the jury determines that the minor passenger is less than 15% negligent for failing to wear a seat belt. Accordingly, even if a jury attributes little negligence to the minor for failing to "buckle up," the driver is still negligent, and the passenger's damages may be reduced by a maximum of 15%.

¶ 33. A second purpose of Wis. Stat. § 347.48(2m)(c) is revealed by examining the interrelationship between Wis. Stat. §§ 347.48 and 347.50. The relevant provisions of the latter statute provide:

**347.50 Penalties.** . . .

---

[6] A plain reading of Wis. Stat. § 347.48(2m)(g) illustrates that a plaintiff's recoverable damages may not be reduced *twice* by the statutory maximum of 15%: ". . . with respect to injuries or damages determined to have been caused by a failure to comply with par. (b), (c) *or* (d), such a failure shall not reduce the recovery for those injuries or damages by more than 15%." (Emphasis added.) In a situation such as this one, involving a violation of subsection (c) and its necessary counterpart subsection (d), reducing the plaintiff's recoverable damages twice would necessarily reduce the recovery for his or her incremental seat belt injuries by more than 15%.

**(2m)** (a) Any person who violates s. 347.48(2m)(b) or (c) and any person 16 years of age or older who violates s. 347.48(2m)(d) may be required to forfeit $10.

(b) No forfeiture may be assessed for a violation of s. 347.48(2m)(d) if the violator is less than 16 years of age when the offense occurs.

. . .[7]

This statute clearly illustrates that the legislature did not want to impose penalties upon minors less than 16 years old for a violation of § 347.48(2m)(d), but would allow penalties to be imposed against "any person" who violates § 347.48(2m)(c). Therefore, subsection (2m)(c), coupled with § 347.50(2m)(a) and (b), also provides for the imposition of a $10 forfeiture *against the driver alone* for failing to properly restrain minor passengers between 4 and 15 years of age. By enacting subsection (2m)(c), the legislature has again acknowledged that the driver of an automobile is more responsible than a minor passenger for that minor's failure to "buckle up."

¶ 34. Most importantly, however, neither statutory change to the common law created an affirmative cause of action for contribution for that responsibility. Instead, a $10 penalty was authorized by Wis. Stat. § 347.50(2m)(a), and a § 347.48(2m)(g) 15% reduction in plaintiffs' recoverable damages was allowed even where the minor passenger is determined to be relatively faultless for failing to wear a seat belt.

¶ 35. Catholic Mutual cites Wis. Stat. § 347.48(4)(d) to support the proposition that the seat

---

[7] We note that Wis. Stat. § 347.50 also contained a "sunset" provision. *See* § 347.50(2m)(c). Subsection (2m)(c) of this statute was again repealed by 1991 Wisconsin Act 26.

belt defense may be used affirmatively in an action for contribution. It provides in relevant part:

> **(4)** CHILD SAFETY RESTRAINT SYSTEMS REQUIRED; STANDARDS; EXEMPTIONS. (a) 1. No resident, who is the parent or legal guardian of a child under the age of 2, may transport the child in a motor vehicle unless the child is properly restrained in a child safety restraint system approved by the department. . . .
>
> . . .
>
> (d) Evidence of compliance or failure to comply with par. (a) is admissible in any civil action for personal injuries or property damage resulting from the use or operation of a motor vehicle but failure to comply with par. (a) does not by itself constitute negligence.

¶ 36. Specifically, Catholic Mutual argues that the legislature's omission of the language "failure to comply. . .does not by itself constitute negligence" from Wis. Stat. § 347.48(2m)(g) and the inclusion of that language in subsection (4)(d) of the same statute "is a clear expression of legislative intent that a violation of subsection (2m) *is* a basis for liability." Catholic Mutual Brief at 8. We disagree.

¶ 37. As we have stated, since its recognition in 1967, the seat belt defense has never been interpreted by this court to provide grounds for an affirmative action against a third party. It has always been used to limit damages, not to compel the payment of damages. When the legislature adopted the common law seat belt defense in 1987, it did nothing to change that consistent and traditional characteristic of the seat belt defense.

## C.

¶ 38. Having determined that the seat belt defense has never before been employed as an affirmative cause of action for contribution, we are left to determine whether, as a matter of equity, defendants may be excused from liability to a greater extent than that allowed by Wis. Stat. § 347.48(2m)(g) when they are at fault for having caused the accident initially. We conclude that they may not.

¶ 39. We have previously recognized that the goal of ensuring safety through use of available seat belts is a laudable one. *See Foley*, 113 Wis. 2d at 489 ("We hope that passengers will also be encouraged to wear seat belts if their potential compensation for injuries is reduced."). However, this goal, as with any principle of equity, must be balanced against the unquestionably sound goal of ensuring public safety through safe and attentive driving on the state's highways and streets. We cannot completely overlook Holcka's negligent conduct in assessing Gaertner's negligent failure to restrain Koldeway in a seat belt.

¶ 40. The facts of this case illustrate why we are not persuaded that the seat belt defense can be used as an affirmative action for contribution. Were we to allow Catholic Mutual's claim to proceed in this case using their own formula for contribution, Gaertner (0% negligence in causing the accident) would be responsible for over $308,000 of Koldeway's injuries, leaving Holcka (100% negligence in causing the accident) responsible for less than $192,000 of Koldeway's approximate $588,000 in total damages. Although Gaertner had an insurance policy worth only $100,000 in this case, we cannot presume that this will always be the case; nor can we assume that defendants' insurers will, as Catholic Mutual has done here, release plaintiffs in

Gaertner's position from liability above their policy limits.

¶ 41.  Although the seat belt defense does not, strictly speaking, affect the determination of causal negligence in any action for personal injury, this case illustrates that use of the seat belt defense in an affirmative cause of action for contribution can drastically alter the landscape of liability by reducing defendants' overall financial responsibility, regardless of the amount of fault that is attributable to the defendant for causing the accident initially.

¶ 42.  Such a policy determination would require this court to declare that seat belt negligence effectively outweighs or supersedes the active causal negligence in any automobile accident. Regardless of the defendant's responsibility for causing the original accident, the driver's failure to properly restrain a passenger could almost eliminate the defendant's financial responsibility altogether. On the other hand, there may be a point when active causal negligence carries more weight than seat belt negligence—a point at which the driver's liability for the passenger's injuries should cease. Performing this balance would thrust this court into a policy-making role more appropriately left to the legislature.

■

¶ 43.  More importantly, as we have mentioned, the legislature has explicitly declared that one's own seat belt negligence should *not* outweigh the determination of active causal negligence in an automobile accident—a possibility that clearly remained after our decision in *Foley*. Instead, the legislature has indicated that seat belt negligence may only reduce the injured party's incremental injuries by a maximum of 15%. *See* Wis. Stat. § 347.48(2m)(g). We conclude that in doing

so, the legislature also intended to limit the potential windfall to defendants who are determined to be causally negligent. We decline to hinder that stated policy by allowing the present cause of action for contribution to proceed.

## III.

¶ 44. Because we conclude that Wis. Stat. § 347.48(2m)(g) evidences the legislature's intent to bar claims for contribution involving seat belt negligence, we affirm the order of the circuit court which dismissed Catholic Mutual's motion for summary judgment against American Family.

*By the Court.*—The order of the circuit court is affirmed.

¶ 45. ANN WALSH BRADLEY, J. (*concurring*). The majority incorrectly concludes that Wis. Stat. § 347.48(2m)(g) "evidences the legislature's intent to preclude use of the seat belt defense in a contribution action." Majority op. at 451. No such legislative intent can be found in the words of the statute or in its history. To the contrary, both the words and the legislative history of the statute evidence its sole true purpose: to limit to 15 percent the potential reduction in plaintiffs' recoverable damages. To impute to this statute a legislative intent that is not legitimately evidenced invades the legislative arena.

¶ 46. While I agree with the mandate of the court, I write separately to express my agreement with Justice Geske's dissent (the dissent) that Wis. Stat. § 347.48(2m)(g) does not bar a common law cause of action for contribution against a driver that violates

Wis. Stat. § 347.48(2m)(c). However, I also write to express my disagreement with her dissent that under current law the negligent driver in this case can pursue a common law cause of action for contribution against the host driver that violates Wis. Stat. § 347.48(2m)(c).

¶ 47. The majority in this case concludes that the legislature intended Wis. Stat. § 347.48(2m)(g) to bar claims for contribution made "in cases involving negligence for failure to restrain another with a seat belt. . . ." Majority op. at 439. The dissent responds that the limited design of Wis. Stat. § 347.48(2m)(g) "is to cap the reduction of an unrestrained plaintiff's recoverable damages," and that the "statute does not address any limitation or reduction of a party's negligence." Dissent at 466. The dissent then concludes that Gaertner violated a safety statute, that the violation enhanced Justin's injuries, and that Gaertner is accordingly liable to Holcka for a significant portion of Justin's damages under the laws of contribution.

¶ 48. As indicated, I agree with the analysis of the dissent that Wis. Stat. § 347.48(2m)(g) does not bar contribution actions under the facts presented here. I leave discussion of that point to the dissent. However, I do not join the dissent's determination that in this case Gaertner is a joint tortfeasor with Holcka. Even if I assume that Gaertner violated a safety statute or a coordinate common law duty, under current law and the stipulated facts the parties to this action are not joint tortfeasors.

¶ 49. There are three requirements for a contribution claim in Wisconsin. First, the parties must be joint tortfeasors, also known as "joint negligent wrongdoers." Second, the parties must be in common liability to the injured party. Finally, one of the parties must have borne an unequal proportion of the common bur-

den. *See General Accident Ins. Co. v. Schoendorf & Sorgi*, 202 Wis. 2d 98, 103, 549 N.W.2d 429 (1996).

¶ 50. Determination of liability in seat belt negligence cases is not an easy task. As the court indicated in *Foley v. City of West Allis*, 113 Wis. 2d 475, 335 N.W.2d 824 (1983):

> [I]t is helpful to think of the automobile accident involving seat-belt negligence as involving not one incident but two. The first incident is the actual collision. . . .The second incident, which is set in motion by the first and would not occur without it, occurs when the occupant of the vehicle hits the vehicle's interior. Wearing seat belts is relevant only to the second collision and. . .may aggravate some of the damages caused by the first collision.

*Id.* at 485 (citations omitted).

¶ 51. To the extent that car accident injuries can be characterized only as one injury, the dissent is correct in finding joint liability. However, *Foley* qualified its initial aggravation statements by also indicating that the "[f]ailure to wear seat belts may also cause additional injuries." *Id.*

¶ 52. In scenarios where independent torts result in separate injuries, the tortfeasors are successive. Generally, such tortfeasors are liable only for the injuries attributable to each of them. "Since successive torts are involved, no joint liability occurs and thus contribution is not allowed." Wis JI—Civil 1723 cmt.; *see Butzow v. Memorial Hosp.*, 51 Wis. 2d 281, 287, 187 N.W.2d 349 (1971). Distinguishing separate injuries from those injuries which are only aggravated would also be consistent with the law of torts that where two negligent acts "concur[ ] in time but result[ ] in distinguishable separate injuries to the same subject, there

are separate torts rather than joint liability." *Johnson v. Heintz*, 73 Wis. 2d 286, 302, 243 N.W.2d 815 (1976).

¶ 53. I note that the very stipulation offered by the parties plays into the two-accident, potentially divisible injury framework created by *Foley* and institutionalized by the resulting standard jury instruction for enhanced injuries. *See* Wis JI—Civil 1723. The stipulation in this case reads in pertinent part:

> 2. The accident was caused solely by the conduct of Gertruda Holcka.
>
> 12. Seventy-five percent of Justin Koldeway's injuries were caused by the failure to wear a safety belt and twenty-five percent were caused by the accident.
>
> 13. Robin Gaertner's operation of her automobile without reasonably believing or ensuring that Justin Koldeway was wearing a safety belt caused 70 percent of Justin Koldeway's enhanced injuries due to the failure to wear a safety belt and Justin Koldeway's failure to wear a safety belt caused 30 percent of his enhanced injuries due to the failure to wear a safety belt.

¶ 54. The stipulation indicates that Holcka's negligence in operating her vehicle caused an accident with Gaertner's car. At the time of that accident Justin suffered injuries that when viewed after the fact constituted 25% of his total injuries. The stipulation provides that after the collision between the two cars, both Gaertner's failure to restrain Justin and Justin's failure to wear a safety belt enhanced Justin's injuries.

¶ 55. The parties further buttress my view of existing law by incorporating the stipulation offered to the court into the standard enhanced injury jury

instruction. As special verdict question and answer number nine in the defendant's brief indicate:

> 9. Assuming the combined negligence that caused Justin Koldeway's enhanced injuries totals 100 percent, what percentage of such negligence is attributable to:
>
> | | |
> |---|---|
> | Justin Koldeway | 30% |
> | Robin Gaertner | 70% |
> | TOTAL | 100% |

Once again it is noteworthy that a tortfeasor whose conduct caused the initial collision and whose negligent conduct may be a substantial causal factor of the victim's enhanced injuries is not credited with any responsibility for those injuries.

¶ 56. The dissent views the injury here as one injury and the tortfeasors as having concurring responsibility for that injury. Yet, a tension arises between the dissent's view and the apportionment of responsibility for the enhanced injury. Neither the special verdict questions nor the stipulation apportions any percentage of responsibility to Holcka for this separate second injury.

¶ 57. In referring to *Foley*, the committee comments to the failure to use safety belt jury instruction acknowledge this tension. "It has been suggested that seat belt negligence should instead be treated as a concurrent tort. . . . After reviewing the *Foley* decision, the Committee concludes that formulating the instruction and special verdict under the concurrent tort theory would be inconsistent with the *Foley* decision. . . ." Wis JI—Civil 1277 cmt.

461

¶ 58. The dissent resolves the quandary presented by *Foley* by essentially ignoring it. The dissent instead relies upon another line of enhanced injury cases which revolve around crashworthiness and products liability claims. *See, e.g., Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, 121 Wis. 2d 338, 359, 360 N.W.2d 2 (1984). While I may agree with the dissent that the general principles of such non-seat belt negligence cases should control in seat belt cases as well, *Foley* cannot be ignored.

¶ 59. The *Foley* court created its two-crash analysis to divorce consideration of the plaintiff's seat belt negligence from inclusion in the initial comparative fault calculation then existing under Wisconsin law. *See Foley*, 113 Wis. 2d at 485–86; Michael K. McChrystal, *Seat Belt Negligence: The Ambivalent Wisconsin Rules*, 68 Marq. L. Rev. 539, 544 (1985). However, in attempting to partition the seat belt negligence away from the primary tortfeasor's negligence, it appears that the *Foley* court may have also partitioned the primary tortfeasor's negligence away from the seat belt negligence in determining responsibility for enhanced injuries. The *Foley* court seems to have immunized initial tortfeasors from the full consequences of their negligence. *See* McChrystal, at 544.

¶ 60. In response to the *Foley* decision the legislature enacted Wis. Stat. § 347.48(2m)(g). Although the legislature limited the reduction of the injured person's damages for failure to wear a seat belt and thereby exposed the initial tortfeasor to liability for the seat belt injury, it did not affect the issue before the court today. Under the stipulated facts of this case only Gaertner and Justin are responsible for the seat belt injury. The 15 percent reduction set forth in Wis. Stat.

§ 347.48(2m)(g) does nothing to alter the successive tortfeasor status between Gaertner and Holcka.[1]

¶ 61.  I believe this court should revisit that part of the two-accident framework of *Foley* which eliminates concurrent responsibility between the primary negligent tortfeasor and other tortfeasors responsible for lack of seat belt restraint in automobile accident cases, as well as the enhanced injury jury instruction. If after revisiting *Foley* this court determines that the negligent parties are joint tortfeasors with common liability, then this court should also address, and not ignore, the policy questions inherent in the certified questions from the court of appeals. *See, e.g., Rockweit v. Senecal*, 197 Wis. 2d 409, 425, 541 N.W.2d 742 (1995).

¶ 62.  Accordingly, I agree with the comment to the standard jury instruction for enhanced injuries, Wis JI—Civil 1723, "[s]ince successive torts are involved, no joint liability occurs and thus contribution is not allowed. However, the accident causing tortfeasor would be entitled to equitable subrogation to the extent he or she paid for those damages attributable by the jury to the enhancing tortfeasor." Wis JI—Civil 1723 cmt. Under existing law, because the tortfeasors in this case are "successive tortfeasors," not "joint tortfeasors," Holcka's claim in contribution must fail.

¶ 63.  SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). I do not join the court's opinion

---

[1] The dissent of Justice Geske is incorrect in stating our position. The legislature by operation of statute makes negligent drivers like Holcka liable without addressing the common law concept of joint or successive tortfeasors.

or mandate. I dissent because I think the majority opinion, Justice Bradley's concurrence and Justice Geske's dissent point out the need to reconsider *Foley v. City of West Allis*, 113 Wis. 2d 475, 335 N.W.2d 824 (1983).

¶ 64.  I agree with the conclusions of both Justice Geske and Justice Bradley that Wis. Stat. § 347.48(2m)(g) does not bar a common law cause of action for contribution against a driver who violates § 347.48(2m).

¶ 65.  Justice Geske and Justice Bradley both raise important considerations about seat belt negligence law in Wisconsin. Seat belt negligence is, I am sure, a recurring issue in numerous cases. I am not comfortable discussing and deciding the points these opinions raise without giving the parties an opportunity to be heard.

¶ 66.  I conclude that the court should put this case on oral argument in September 1998 and request the parties to submit additional briefs discussing the issues raised by the concurrence and dissent and the effect of *Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, 121 Wis. 2d 338, 360 N.W.2d 2 (1984), *Farrell v. John Deere Co.*, 151 Wis. 2d 45, 443 N.W.2d 50 (Ct. App. 1989), and Wis. Stat. § 347.48(2m)(g) (1995–96) on the *Foley* decision.

¶ 67.  For the foregoing reasons, I dissent and write separately.

¶ 68.  JANINE P. GESKE, J. *(dissenting)*. I dissent. The majority focuses on the wrong statute in concluding that Gaertner and her insurer, American Family, have no liability to her injured minor passenger, Justin, for his safety belt related injuries, and

therefore that Holcka and her insurer, Catholic Mutual, have no right of contribution against Gaertner. Wisconsin Stat. § 347.48(2m)(g), the statute on which the majority relies, is strictly concerned with reducing the recoverable damages of an injured passenger who was not restrained by a safety belt at the time of the accident. That statute does not answer the real question presented in this case: Who between the two drivers is responsible for paying those reduced damages?

¶ 69.   I conclude that Gaertner, the host driver, violated a safety statute, Wis. Stat. § 347.48(2m)(c),[1] and was negligent per se. Because Gaertner was negligent, and her negligence caused Justin injuries, she has common liability with Holcka, the negligent driver of the other car; I therefore also conclude that Catholic Mutual, having paid all of Justin's recoverable damages on behalf of Holcka, is entitled to contribution from Gaertner and American Family for her portion of Justin's injuries.

### I.

¶ 70.   I disagree with the majority's application of Wis. Stat. § 347.48(2m)(g), the primary purpose of which is to limit the plaintiff's damages. That provision states:

> (g)  Evidence of compliance or failure to comply with par. (b), (c) or (d) is admissible in any civil action for personal injuries or property damage resulting from the use or operation of a motor vehi-

---

[1] Petitioner Holcka asserts that Gaertner also has common law liability to Justin for his enhanced injuries. Resolution of that question is not necessary to my analysis that Gaertner is statutorily liable for Justin's enhanced injuries.

cle. *Notwithstanding s. 895.045, with respect to injuries or damages determined to have been caused by a failure to comply with par. (b), (c) or (d), such a failure shall not reduce the recovery for those injuries or damages by more than 15%.* This paragraph does not affect the determination of causal negligence in the action. (Emphasis added.)

¶ 71. The recovery reduction provision of Wis. Stat. § 347.48(2m)(g) does not address the question before this court—is contribution prohibited between a negligent driver and a negligent host driver who had no basis to reasonably believe that his or her minor passenger was properly restrained by a safety belt? The thrust of Wis. Stat. § 347.48(2m)(g) is to cap the reduction of an unrestrained plaintiff's recoverable damages. The statute does not address any limitation or reduction of a party's negligence.

¶ 72. Another provision, Wis. Stat. § 347.48(2m)(c), controls the outcome in this case. That provision states:

> (c)  If a motor vehicle is required to be equipped with safety belts in this state, no person may operate that motor vehicle unless he or she reasonably believes that each passenger who is at least 4 years old and not more than 15 years old and who is seated at a designated seating position in the front seat required under 49 CFR 571 to have a safety belt installed or at a designated seating position in the seats, other than the front seats, for which a shoulder harness has been installed is properly restrained.

Based on the terms of this subsection, I conclude that Wis. Stat. § 347.48(2m)(c) is a safety statute.

## II.

¶ 73. The violation of a safety statute constitutes negligence per se if three elements are present: 1) the harm inflicted was the type the statute was designed to prevent; 2) the person injured was within the class of persons sought to be protected; and 3) there is some expression of legislative intent that the statute become a basis for the imposition of civil liability. *See Tatur v. Solsrud*, 174 Wis. 2d 735, 743, 498 N.W.2d 232 (1993).

¶ 74. The reasons I conclude that Wis. Stat. § 347.48(2m)(c) is a safety statute, and that Gaertner is negligent per se, are the following. Taking the class element first, there is no dispute that Justin, an 11-year old passenger in a car operated by Gaertner and having rear seat shoulder harness restraints, is a member of the class of persons meant to be protected by the statute, namely, minors between the ages of 4 and 15. *See* Wis. Stat. § 347.48(2m)(c).[2] Taking the harm element next, Justin's safety belt related injury following the impact with Holcka's car is one of the types of harm this safety statute was enacted to prevent. Finally, I discern a legislative intent, based on the language of the statute as a whole and on its legislative history, that a host driver's failure to comply with Wis. Stat. § 347.48(2m)(c) is negligence per se and forms the basis

[2] Other subsections protect children up to the age of 2, and children between the ages of 2 and 4. See Wis. Stat. § 347.48(4)(a)1 and (4)(a)2 (1989–90), respectively. In the 1995–96 version of the statute, the requirements of the former (4)(a)1 and (4)(a)2 are telescoped into the current (4)(a)1. The current (4)(a)2 covers child safety restraint systems for children who are at least 4 years old, but less than 8 years old.

for civil liability.[3] I discuss the latter two elements more fully below.

¶ 75.   The type of harm requirement is met in this case. No one contends that safety belts prevent motor vehicle accidents. Instead, the purpose of safety belts is to avoid injury, or at least to avoid the enhanced or incremental injuries that can occur when, in a vehicle accident, the passenger's body is unrestrained and free to contact fixtures and objects within the vehicle interior. *See Bentzler v. Braun*, 34 Wis. 2d 362, 387, 149 N.W.2d 626 (1967). These contacts are often referred to as "second collisions." *See* Monte E. Weiss, *The Enhanced Injury Theory as a Defense*, 69 Wis. Lawyer 10 (Nov. 1996).

¶ 76.   For some time Wisconsin has recognized that a tortfeasor can be liable for enhanced injuries. *See Farrell v. John Deere Co.*, 151 Wis. 2d 45, 60–61, 443 N.W.2d 50 (Ct. App. 1989) (listing cases)). This court recognized the potential for incremental or enhanced injuries particularly in the case of a failure to

---

[3] It is true that this court in *Bentzler v. Braun*, 34 Wis. 2d 362, 385, 149 N.W.2d 626 (1967), declined to interpret Wis. Stat. § 347.48 as a safety statute in the "sense that it is negligence per se for an occupant of an automobile to fail to use available seat belts," because Wis. Stat. § 347.48 did not, by its terms, require the use of seat belts. Instead, the *Bentzler* court stated that where the evidence showed a causal relationship between the person's injuries and his or her failure to use the seat belt, the jury could make a finding of ordinary negligence. *See id.* at 387. At the time *Bentzler* was decided, Wis. Stat. § 347.48 placed no obligation on a vehicle operator to ensure that his or her minor passenger was restrained by a safety belt. In 1991, at the time of the accident in this case, however, Wis. Stat. § 347.48(2m)(c) imposed just such an obligation. Thus, *Bentzler* does not preclude my determination that Wis. Stat. § 347.48(2m)(c) is a safety statute, the violation of which is negligence per se.

wear safety belts in *Foley v. City of West Allis*, 113 Wis. 2d 475, 335 N.W.2d 824 (1983).

¶ 77. According to the testimony of an expert witness, Justin sustained enhanced injuries because he was not restrained by a shoulder harness safety belt at the time of the accident. I conclude that Justin's safety belt related injuries are one of the types of injuries this statute was designed to prevent.

¶ 78. Finally, I conclude that the third element, the "legislative intent" requirement for per se liability, is also met in this case.

¶ 79. As originally enacted, Wis. Stat. § 347.48 required the presence of seat belts in cars manufactured or assembled beginning with the 1962 models. This court first interpreted that statute in 1967. *See Bentzler*, 34 Wis. 2d 362. The *Bentzler* court concluded that the statute did not require safety belt use, but also acknowledged that a failure to use the belt may be considered ordinary negligence that contributes to the injuries, if proper evidence of cause and effect is introduced.

¶ 80. The legislature amended Wis. Stat. § 347.48 following our decision in *Foley*, 113 Wis. 2d 475. In that case, the plaintiffs were two adults, one a passenger and one a driver, neither of whom was wearing safety belts. They sued the driver of the other car. The jury attributed some negligence for the collision to both drivers. The jury also found that the unbelted passenger was 70 percent negligent for not having used her safety belt. This court said that causal negligence is determined first, and where there are incremental injuries caused by a failure to use a safety belt, those injuries are treated separately for purposes of calculating recoverable damages. 113 Wis. 2d at 490. Had this court not reached that conclusion in *Foley*, the unbelted

passenger plaintiff would have recovered nothing from the defendant negligent driver.

¶ 81.   The legislature decided to modify the effect of the *Foley* decision when, by virtue of 1987 Wis. Act 132, it amended Wis. Stat. § 347.48, and placed a ceiling on how much a passenger's damages can be reduced for his or her own negligence in failing to wear a safety belt. *See* App. A-Res–10.[4] The amended statute cautioned, however, after limiting the permissible reduction of the plaintiff's damages to 15 percent, "This paragraph does not affect the determination of causal negligence in the action." *Id*. at 12.

¶ 82.   The Legislative Council Staff's description of 1987 Wis. Act 132 also highlighted a distinction between the facts in *Foley* and the newer provisions of the Act: "The driver of a motor vehicle has responsibility under the Act regarding a young passenger's compliance with the law." App. A-Res–4.

¶ 83.   As the legislative history of Wis. Stat. § 347.48 recognizes, there can be more than one cause of a person's injuries, those causes including the failure to wear a safety belt. *See* App. A-Res–7. Logically, then, failure to ensure that one's minor passenger wears a safety belt can be a cause of the passenger's injuries.

¶ 84.   This court observed in *Theisen v. Milwaukee Auto. Mut. Ins.*, 18 Wis. 2d 91, 118 N.W.2d 140 (1962), that when assessing the negligence of the host driver or another driver, and the guest passenger, "the

---

[4] "Under *Foley*, if negligent failure to wear a safety belt is a cause of the injured person's injuries, the injured person's recoverable damages are to be reduced by the percentage of damages caused by failure to wear a safety belt. Under Act 132, recoverable damages may not be reduced by more than 15%, regardless of the percentage of damages caused by failure to wear a safety belt." App. A-Res–7.

ultimate question relating to their respective negligence is whether such negligence *caused the guest's injuries*. In most cases it is not necessary to determine whether the lack of care of the various parties found negligent caused the collision as distinguished from the injuries. . .the apportionment question likewise should then be submitted only in terms of causing the plaintiff's injuries." (Emphasis added.) *Thiesen*, 18 Wis. 2d at 106–07. Similarly, the person who fails to comply with Wis. Stat. § 347.48(2m)(c) is causally negligent, and should be required to contribute to the payment of the injured passenger's recoverable damages.

¶ 85.   Gaertner and American Family assert that determining a violation of Wis. Stat. § 347.48(2m)(c) to be negligence per se would be absurd, because that interpretation would penalize operators who fail to ensure that minors over 4 years old are buckled. The absurdity arises, according to Gaertner and her insurer, when one reads another subsection, Wis. Stat. § 347.48(4)(a)2, requiring use of a child safety restraint system for minor passengers between 2 and 4 years of age. That subsection further states that failure to comply "does not by itself constitute negligence." Holcka and her insurer respond by contending that the absence of the language found in Wis. Stat. § 347.48(4)(a)2, from Wis. Stat. § 347.48(2m) leads to the "inescapable conclusion" that a violation of sub. (2m) does constitute negligence per se.

¶ 86.   Holcka's argument is more persuasive. I agree that the absence of the phrase "does not by itself constitute negligence" from Wis. Stat. § 347.48(2m), combined with the presence of the phrase "[t]his paragraph does not affect the determination of causal negligence in the action," in Wis. Stat. § 347.48(2m)(g)

demonstrate a legislative intent to recognize a violation of Wis. Stat. § 347.48(2m)(c) as negligence per se. Whether this court would also conclude that a violation of the duty imposed by Wis. Stat. § 347.48(4)(a)2 constitutes common law negligence, despite the limiting language of that subsection, is a question for another day. In my view, it would be unjust not to impose liability on the host driver when, in violation of Wis. Stat. § 347.48(2m)(c), and in light of "the realities of the frequency of automobile accidents and the extensive injuries they cause, the general availability of seat belts, and the public knowledge that riders and drivers should 'buckle up for safety,' "[5] Gaertner operated her vehicle without reasonably believing that her 11-year old passenger was restrained by a safety belt.

¶ 87. In sum, I conclude that Wis. Stat. § 347.48(2m)(c) is a safety statute. There is no dispute that Gaertner violated the duty imposed by that statute when she operated her vehicle without reasonably believing that Justin was restrained by a safety belt. Once Justin received injuries beyond those he would have sustained had he been restrained, Gaertner's conduct became negligence per se. She is civilly liable for Justin's damages.

### III.

¶ 88. The majority failed to engage in an analysis of whether Wis. Stat. § 347.48(2m)(c) is a safety statute, apparently out of a fear that a conclusion such as mine would unavoidably lead to the question of contribution by the host driver, a question not yet reached by this court.

---

[5] *Foley v. City of West Allis*, 113 Wis. 2d 475, 483–84, 335 N.W.2d 824 (1983).

¶ 89. A claim for contribution is separate from and independent of the underlying claim. *See Johnson v. Heintz*, 73 Wis. 2d 286, 295, 243 N.W.2d 815 (1976). As the majority describes it, there are three prerequisites to a contribution claim: "1. Both parties must be joint negligent wrongdoers; 2. they must have common liability because of such negligence to the same person; [and] 3. one such party must have borne an unequal proportion of the common burden." Majority op. at 444, citing *General Accident Ins. Co. v. Schoendorf & Sorgi*, 202 Wis. 2d 98, 103, 549 N.W.2d 429 (1996).

¶ 90. "Whether common liability exists is determined at the time the damages were sustained." *Teacher Retirement System of Texas v. Badger XVI Ltd. Psp.*, 205 Wis. 2d 532, 545, 556 N.W.2d 415 (Ct. App. 1996). In several cases involving complicated facts, Wisconsin courts have said that whether there is sufficient common liability to support a claim for contribution is a question of fact properly resolved at trial. *See Teacher Retirement System*, 205 Wis. 2d at 546; *State Farm Mut. Auto. Ins. Co. v. Continental Cas. Co.*, 264 Wis. 493, 497, 59 N.W.2d 425 (1953). In this case, there was no trial, but the parties' stipulation provided that Holcka was negligent for causing the accident, and I conclude that the facts as stipulated[6]

---

[6] It is somewhat unfortunate that in this case, where the court is asked to decide questions of law with far-reaching consequences, we do not have a jury determination of negligence and damages but have only the limited facts as stipulated by the parties. The parties did agree the accident was caused solely by Holcka's conduct. They also agreed that 75 percent of Justin's injuries were caused by the failure to use a safety belt and 25 percent were caused by the accident. Gaertner's operation of her vehicle without reasonably believing or ensuring that Justin was wearing a safety belt caused 70 percent of his enhanced

demonstrate that Gaertner was negligent per se for violating Wis. Stat. § 347.48 (2m)(c). Further, it is undisputed that the conduct of both Holcka and Gaertner resulted in injury to Justin.

¶ 91. Gaertner and American Family dispute that there can be common liability in this case, because Gaertner's failure to ensure that Justin was restrained did not cause the accident. However, I conclude that common liability can exist when one of the negligent tortfeasors caused the accident and some injury, and the other negligent tortfeasor negligently caused additional injury at the same time.

¶ 92. In *Schoendorf*, we listed a number of examples of joint liability, even though there was some separation in time of the negligent acts. For example, we cited the analysis in *Butzow v. Wausau Memorial Hosp.* 51 Wis. 2d 281, 288–289, 187 N.W.2d 349 (1971)(original tortfeasor and physician jointly and severally liable only for aggravation of damages), and Restatement (Second) of Torts § 879 (1979)(discussing situations where the tortfeasors can be jointly liable only for the aggravation of initial injuries; in other situations, the tortfeasors can be jointly liable for the entire harm). The Farrell court also cited *Sumnicht v. Toyota Motor Sales, U.S.A.*, 121 Wis. 2d 338, 359, 360 N.W.2d 2 (1984) (if more than one tortfeasor contributed to the injury, the law of joint and several liability applies); and *Arbet v. Gussarson*, 66 Wis. 2d 551, 557, 225 N.W.2d 431 (1975) (holding that it was not important that the automobile's design defect did not actually cause the initial accident, as long as it was a

injuries due to the failure to wear a safety belt. Also according to the stipulation, Justin's failure to wear a safety belt caused 30 percent of his enhanced injuries due to the failure to wear a safety belt.

substantial factor in causing burn injury after gas tank erupted). *See Farrell, 151 Wis. 2d at 60 n.3.* In enhancement cases, "the successive tort-feasor is not jointly liable for all the injuries to the claimant, but only for those injuries caused by the tortious conduct over and above the damage or injury that would have occurred as a result of the accident absent the successor tortfeasor's conduct." *Farrell*, 151 Wis. 2d at 61.

¶ 93.  Attempting to bolster its denial of a right to contribution, the majority observes that, in this case, Gaertner would end up liable for the bulk of Justin's recoverable damages despite the fact that her conduct caused only safety belt related injuries, and not the initial impact. This result, leaving the negligent driver responsible for 40% of Koldeway's damages, is apparently sufficient to persuade the majority that the seat belt defense cannot "be used as an affirmative action for contribution." Majority op. at 455.

¶ 94.  I am not so persuaded. Finding Gaertner liable for the injuries she caused is not "wholly out of proportion to her culpability," *see Rockweit v. Senecal*, 197 Wis. 2d 409, 426, 541 N.W.2d 742 (1995), when the parties' stipulation already demonstrates that Gaertner is responsible for 70 percent of Justin's safety belt related injuries.

¶ 95.  The majority's hesitation to recognize a claim for contribution also seems founded on fear that the defendant driver will somehow avoid his or her financial responsibility. "[U]se of the seat belt defense in an affirmative cause of action for contribution can drastically alter the landscape of liability by reducing defendants' overall financial responsibility, regardless of the amount of fault that is attributable to the defendant for causing the accident initially." Majority op. at 456. The majority continues, "Regardless of the defen-

dant's responsibility for causing the original accident, the (host's) failure to properly restrain a passenger could almost eliminate the defendant's financial responsibility altogether." *Id.*

¶ 96.   In my view, recognizing a right to contribution in this case does not permit Holcka and her insurer to avoid their financial responsibility. Allowing contribution will not give the defendant driver any unwarranted "discount" on his or her financial obligation. When contribution is allowed, the burden of paying damages is distributed, not shifted. *See Pachowitz v. Milwaukee & Suburban Transport Co.*, 56 Wis. 2d 383, 387, 202 N.W.2d 268 (1972). When contribution is allowed, the injured minor passenger is still made whole (subject to the maximum 15% reduction of recoverable damages under Wis. Stat. § 347.48) and the negligent host bears his or her share of the responsibility for the safety belt related injuries only.[7] Equitable concerns are satisfied. Moreover, whether the minor passenger's safety belt related injuries are substantial or minimal makes no difference as to whether the right to contribution exists. Appellate courts decide questions of law based on the law, and not on palatable outcomes.

---

[7] Presumably under the majority's reasoning, this court would not recognize any host liability for damages because of the host driver's failure to ensure that his or her minor passenger was restrained by a safety belt. Thus, an effect of the majority's reasoning is that if the minor passenger is less than 7 but more than 4 years old, and the neighbor transporting him or her had failed to ensure that the minor was restrained by a safety belt, the minor will never recover more than 85 percent of his or her safety belt related damages even though he or she could not have been contributorily negligent as a matter of law in failing to wear a safety belt. *See* Wis. Stat. § 891.44.

¶ 97. The majority focuses on the wrong side of the proportion. According to the expert testimony, had the host driver complied with the statute and ensured that her minor passenger was restrained, the bulk of Justin's injuries would not have occurred. Unless the defendant driver is entitled to contribution, he or she is disproportionately responsible for the plaintiff's recoverable damages. This disproportion is inequitable.

¶ 98. Ultimately, the majority concedes that Wis. Stat. § 347.48 does not preclude contribution by the host driver when it states, ". . . the seat belt defense does not, *strictly speaking*, affect the determination of causal negligence in any action for personal injury . . ." Majority op. at 456. The majority's reluctance to recognize a right of contribution in this case is based in part on the perception that the legislature should decide that question. Indeed, the legislature has already decided. Despite several amendments to the "seat belt law," contribution has not been precluded. Causal negligence is determined first. The defendant driver, Holcka, and the negligent host driver, Gaertner, are both causally negligent.

¶ 99. Justice Bradley's concurrence misinterprets the *Foley* decision. *Foley* does not hold that the primary tortfeasor (the negligent driver) is immunized "from the full consequences of their negligence," *see* concurring op. at 462, but instead holds that a plaintiff's contributory negligence in failing to put on a safety belt should act to reduce the amount of recoverable damages. The reduction of damages discussed in *Foley*, and altered and codified in Wis. Stat. § 347.48(2m)(g), does not affect the negligent driver's liability for both initial and safety belt related dam-

ages.[8] Pursuant to the statute, a plaintiff's safety belt negligence does not diminish a negligent driver's liability, it diminishes by 15% the amount of safety belt related damages the plaintiff can recover. *See* Wis. Stat. § 347.48(2m)(g). The concurrence errs when it advances the theory that safety belt negligence extinguishes the liability of the negligent driver for the safety belt related injuries to the plaintiff.

¶ 100. The concurrence states in paragraph 60 that, post-*Foley*, the legislature "exposed the initial tortfeasor to liability for seat belt injury." Despite the earlier discussion by the concurrence, it now effectively concedes that the legislature has made the negligent driver liable for enhanced injuries, thereby making the negligent driver and the negligent host driver joint tortfeasors. The concurrence reads the stipulation to be one in which the parties have agreed to disregard what would be a joint and several liability for the seat belt related injuries between Gaertner and Holcka under current law, and to artificially create a successive tortfeasor status between them. I disagree. The stipulation does not say that, and the parties did not argue that.

¶ 101. In this case, the parties stipulated that Holcka is solely responsible for the accident. Therefore, under *Foley* she is liable for 100% of the recoverable damages. The parties also stipulated that 75% of the

---

[8] The statute has changed the theory of *Foley,* as at least part of that decision may be read. *See* 113 Wis. 2d at 489. As the concurrence reads it, *Foley* eliminated liability of the negligent driver for any of the safety belt related damages. Wisconsin Stat. § 347.48(2m)(g) effectively puts the negligent driver's liability back in, and merely places a ceiling on how much the plaintiff's failure to wear a safety belt can limit his or her recoverable damages for enhanced injuries.

total injuries were caused by Justin's failure to wear a safety belt. In most cases, only the plaintiff can be found negligent for failing to wear a safety belt. In those cases, a plaintiff is 100% negligent for failing to buckle up. Here, we had a minor passenger so the parties then stipulated to divide up the "safety belt negligence" as follows: 70% of the safety belt related injuries were caused by Gaertner's negligence and 30% were caused by Justin's negligence. Justin's "safety belt negligence" becomes subject to Wis. Stat. § 347.48(2m)(g), reducing the total amount of recoverable enhanced damages by 15%. Since Holcka and Gaertner remain jointly and severally liable for the safety belt related injuries, Holcka and her insurer are entitled to contribution.

### IV.

¶ 102.  Finally, the majority looks to a forfeiture provision as an indication that the legislature, while requiring motorists to ensure that their minor passengers are restrained by safety belts, intended that the only consequence for violating that statute be a $10 forfeiture.[9] The majority mistakenly relies on the existence of the forfeiture statute to manifest a legislative intent to preempt actions for contribution arising out of the negligent failure to ensure that a minor passenger is "buckled up." *See* majority op. at 452 n.6; 453–54.

¶ 103.  By relying on a forfeiture provision and the 15 percent reduction in total recoverable damages to conclude there is no right of contribution here, the majority mixes apples and oranges and ignores legisla-

---

[9] The amount of the forfeiture ranges from $10 to $200 depending on the age of the minor passenger at the time of the violation. In this case, the $10 amount would apply because Justin was 11 years old at the time of the accident.

tive intent. Further, by this analysis the majority overlooks the existence of other forfeiture provisions arising from the motor vehicle code, which in no way limit the trial of negligence issues. *See, e.g.,* Wis. Stat. § 347.06, 347.09 requiring lighted headlamps before operation; Wis. Stat. § 347.14, requiring stop lamps in working order before operation of vehicle; Wis. Stat. § 347.245, requiring display of slow moving vehicle emblem before operation of certain vehicles; and Wis. Stat. § 347.30, imposing forfeitures of $10 to $200 for violations of lighting provisions or display provisions.

¶ 104.   Under the reasoning of the majority, an injured minor like Justin Koldeway can recover from the negligent driver 100% of his or her damages, minus 15% of his or her safety belt related damages. The host driver, who failed to ensure that the minor passenger was restrained, pays a $10 forfeiture to the State, and is free from all liability for the safety belt related injuries that he or she caused. This result cannot be what the legislature intended.

¶ 105.   For the foregoing reasons, I respectfully dissent.

¶ 106.   I am authorized to state that Justice Donald W. Steinmetz joins in this dissent.